IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JORDAN SCHONER,

    Petitioner,

    v.

SARAH SCHONER,

    Respondent.

Case No. 3:23-cv-382

Judge Walter H. Rice

Mag. Judge Peter B. Silvain, Jr.

---

ORDER SUSTAINING MOTION TO APPOINT PROCESS SERVER (DOC. #3), OVERRULING WITHOUT PREJUDICE REQUEST TO EXPEDITE PROCEEDINGS (DOC. #4), AND ORDERING PETITIONER JORDAN SCHONER TO SHOW CAUSE WITHIN TWENTY-EIGHT (28) DAYS AFTER SERVICE IS PERFECTED UPON RESPONDENT SARAH SCHONER AND NOTICE OF SAME IS FILED WITH COURT, WHY THE PETITION FOR RETURN OF THE CHILDREN TO MEXICO AND ISSUANCE OF SHOW CAUSE ORDER (DOC. #1) SHOULD NOT BE DISMISSED PURSUANT TO THE *YOUNGER V. HARRIS* ABSTENTION DOCTRINE; RESPONDENT MAY FILE A RESPONSIVE MEMORANDUM WITHIN TWENTY-ONE (21) DAYS THEREAFTER

---

On or about June 29, 2023, Respondent Sarah Schoner, a United States citizen, and lawful permanent resident ("LPR") of Mexico, took her children, H.E.S., a United States citizen, and LPR of Mexico, and A.M.S., a citizen of Mexico and the United States, to Ohio to visit Respondent's mother. (Petition, Doc. #1, PAGEID 3, 5, ¶¶ 11, 31, 33). On July 21, 2023, Respondent filed a Motion for *Ex-Parte* Emergency Custody of H.E.S. and A.M.S. in the Montgomery County, Ohio, Court of Common Pleas, Domestic Relations Division ("State Court") (*id.* at PAGEID 76), and a Petition for Legal Separation ("Divorce Petition") from Petitioner Jordan Schoner, a resident of Cancún,

Quintana Roo, Mexico, and also a United States citizen, and LPR of Mexico.[1] The State Court docket shows that Respondent's Custody Motion was granted on July 21, 2023, along with a Temporary Restraining Order against Petitioner, with a hearing set for August 7, 2023. However, the docket does not reflect that service has been perfected against Petitioner; nor is there any indication that the August 7 hearing took place. On December 22, 2023, Respondent moved for a Mexican process server to be appointed; that motion was sustained on December 26, 2023. The Divorce Petition and final custody determination remain pending in the state court.

Meanwhile, Petitioner filed for divorce in the State of Quintana Roo, Mexico, on September 25, 2023 (Doc. #1, PAGEID 8, ¶ 46), and on December 19, 2023, filed the instant Verified Petition for Return of the Children to Mexico and Issuance of Show Cause Order. On December 28, 2023, Petitioner filed a Motion to Appoint Process Server (Doc. #3) and Request to Expedite Proceedings (Doc. #4). In the Petition, Petitioner alleges that Respondent unlawfully removed H.E.S. and A.M.S. from their country of residence, in violation of The Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), a treaty ratified by the United States and enacted in 1988 by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, and to which the United States and Mexico became "contracting countries" (*i.e.*, countries with reciprocal return obligations) in 1991. (Doc. #1, PAGEID 2, ¶¶ 2-5). Petitioner claims that Quintana Roo "adheres to the legal doctrine of *patria potestad* . . . . Pursuant to that doctrine, both parents have joint [legal] custody rights." (*Id.* at PAGEID 9, ¶ 55, citing *Saldivar v. Rodela*, 879 F. Supp. 2d 610, 623 (W.D. Tex.

---

[1] *Schoner v. Schoner*, Case No. 2023 LS 00009, https://pro.mcohio.org/, last accessed Mar. 4, 2024.

2012)). This right, Petitioner alleges, is recognized under Article 5a of the Hague Convention as a "*ne exeat regno*" right.[2] (*Id.* at ¶ 56, citing *Abbott v. Abbott*, 560 U.S. 1, 11-22 (2010)). Petitioner asserts that Mexico is the "country of habitual residence" for the children and thus, under Articles 12 and 18 of the Hague Convention, this Court must return H.E.S. and A.M.S. to Mexico during the pendency of custody and divorce proceedings. (*Id.* at PAGEID 9-10, ¶¶ 60, 67-68, quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 5 (2014)).

To meet his *prima facie* burden under the Hague Convention and ICARA, Petitioner must show by a preponderance of the evidence that: (1) Mexico is his children's country of habitual residence; and (2) his children were removed in violation of his custody rights. 22 U.S.C. § 9003(e)(1)(A-B); *Padilla v. Troxell*, 850 F.3d 168, 175 (4th Cir. 2017). If Petitioner makes a *prima facie* showing, then the burden would shift to Respondent to demonstrate either by clear and convincing evidence that returning the children to Mexico would pose a grave risk to their safety, or by a preponderance that Petitioner either consented to or acquiesced in the removal or retention of the children by Respondent. 22 U.S.C. § 9003(e)(2)(A-B); *Padilla*, 850 F.3d at 175.

"The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention." 22 U.S.C. § 9003(a). Consequently, this Court must give full faith and credit "to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter." 22 U.S.C. § 9003(g). Further, this Court's

---

[2] "In the family law context, a *ne exeat* order is '[a]n equitable writ restraining a person from leaving, or removing a child or property from, the jurisdiction.'" *Royal Borough of Kensington & Chelsea v. Bafna Louis*, No. 23-470, 2023 U.S. App. LEXIS 25141, *5 n.1 (2d Cir. Sept. 22, 2023), quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).

3

jurisdiction under ICARA is circumscribed to the narrow issue of determining children's country of habitual residence through a totality of the circumstances analysis and, if necessary, ordering the children's return. "[A] district court deciding a petition for return of a child has jurisdiction to decide the merits of the wrongful removal claim, but *it may not decide the merits of the underlying custody dispute.*" *Kufner v. Kufner*, 519 F.3d 33, 38 (1st Cir. 2008) (emphasis added); *accord*: Hague Convention, art. XIX ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue."). "In sum, the district court's role is to decide whether: (1) the abduction was lawful, (2) returning the child would be safe, and (3) the country of habitual residence is the appropriate venue for the underlying custody dispute." *Dawson v. Dylla*, 534 F. Supp. 3d 1360, 1365 (D. Colo. 2021), *vacated and remanded on other grounds at* No. 21-1225, 2021 WL 5232251 (10th Cir. Nov. 10, 2021).

  The Court makes no determination at this point as to any of these elements, and indeed, the ongoing custody case in Ohio state court leads the Court to consider whether it may even do so, or whether, instead, it must abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). "Under *Younger* abstention, . . . a federal court *must* decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neil v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2006) (emphasis added), citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982); *Younger*, 401 U.S. at 41. *Younger* abstention is compelled when the following elements are met: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important

4

state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990), citing *Middlesex*, 457 U.S. at 432. "*Younger* abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'" *O'Neill*, 511 F.3d at 641, quoting *Ohio Civ. Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). Nonetheless, a federal court may *sua sponte* dismiss a petition under *Younger* if the three elements are met. *See, e.g., Squire v. Coughlan*, 469 F.3d 551, 555, 558 (6th Cir. 2006) (affirming district court's *sua sponte* dismissal of complaint on *Younger* grounds).

Based on the record currently before the Court, it appears that at least two of the elements are met, and perhaps all three. *First*, not only is there a state civil judicial proceeding ongoing, that divorce and custody proceeding was initiated almost five months prior to Petitioner filing in this Court. *Second*, there are important state interests being adjudicated in the state forum—the dissolution of Petitioner and Respondent's marriage and the custody of their children. If the propriety of Respondent relocating the children and herself to Ohio was, is, or will be at issue in the state forum, then it behooves this Court not to risk issuing a conflicting ruling on that issue. *Third*, this Circuit, albeit in an unpublished opinion, has held that there is a presumption federal constitutional issues may be raised in state court custody proceedings. *Furr-Barry v. Underwood*, 59 F. App'x 796, 797 (6th Cir. 2003). This holding is consistent with the general presumption that federal constitutional claims may be raised in state courts—and, in the case of habeas corpus, requiring such claims to be raised there.

5

Additionally, there are other considerations that weigh in favor of abstention. While this Court is unaware of any adjudication of the question, a Hague Convention petition may be a compulsory counterclaim to a divorce complaint under Ohio law. *See* Ohio Civ.R. 13(A) (emphasis added) ("A pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."). To allow Petitioner to avoid answering the divorce complaint for almost six months, then raise a Hague Convention claim that could, and probably should, have been raised in the ongoing state court proceeding would come close to the forum shopping that courts strive to avoid. Finally, and most importantly, H.E.S. and A.M.S. are subject to a valid custody order, and principles of comity caution against disturbing that order and setting up dueling custody proceedings, which returning them to Petitioner in Mexico would necessarily do.

The Court is unaware of any Supreme Court decision as to whether *Younger* abstention is appropriate under ICARA, and the United States Court of Appeals for the Sixth Circuit does not appear to have expressly reached the issue, either. *See March v. Levine*, 249 F.3d 462, 468-69 (6th Cir. 2001) (declining to reach the *Younger* issue because the party seeking abstention had previously expressly invoked federal jurisdiction). The weight of authority elsewhere is divided as to whether *Younger* abstention is applicable in the context of an ICARA petition, even when a state court custody proceeding is completed or ongoing. *See Brazilay v. Brazilay*, 536 F.3d 844, 850 (8th Cir. 2008), quoting *Yang v. Tsui*, 416 F.3d 199, 204 (3d Cir. 2005) (*Younger* abstention not appropriate because state custody proceeding should give way to

adjudication of ICARA petition); *Karpenko v. Leendertz*, 619 F.3d 259, 262 n.1 (3d Cir. 2010), citing *Yang*, 416 F.3d at 202 (*Younger* abstention not applicable when Hague Convention issues not raised in state court proceedings); *Hazbun Escaf v. Rodriquez*, 191 F. Supp. 2d 685, 692-93 (E.D. Va. 2002) ("Although a state has a manifest interest in the outcome of a child custody dispute adjudicated in its courts, the resolution of a custody dispute is not at issue in a Hague Convention petition."); *but see Yang*, 416 F.3d at 202 ("Where the Hague Convention Petition has been raised and litigated in the state court, abstention by the federal court has generally been found to be appropriate"); *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001); *Minette v. Minette*, 162 F. Supp. 3d 643, 650 (S.D. Ohio 2016) (Graham, J.); *Cerit v. Cerit*, 188 F. Supp. 2d 1239, 1247-48 (D. Hawai'i 2002) (abstention appropriate because Hague Convention claim was raised in state court); *Bouvagnet v. Bouvagnet*, No. 01 C 4685, 2001 WL 1263497 (N.D. Ill. Oct. 22, 2001), *appellate opinion ordered withdrawn at* 45 F. App'x 535 (7th Cir. 2002) (abstention appropriate because Hague Convention claim could have been raised in state court).

The Court acknowledges that the cases in which courts have held that abstention is inappropriate have used strong language about the need for the state custody proceeding to give way to the federal Hague Convention petition, and not the other way around. Those cases, however, are distinguishable. In *Barzilay*, there had been entered a final, bilateral divorce decree with a provision governing expatriation of the parents and children, which the spouse seeking to keep the children in the United States had allegedly violated. 536 F.3d at 848-49; *see also Karpenko*, 619 F.3d at 261 (custody stipulation incorporated into prior state court divorce judgment); *Hazbun Escaf*,

7

191 F. Supp. 2d at 687-88 (child filed suit in state court to modify an existing Colombian custody order). While in *Yang* there was an interim custody order from a United States state court for which there was no record of any Hague Convention findings being made, there was also a competing custody order from a Canadian court. Thus, an adjudication of the *Yang* Hague Convention petition would aid in determining where to continue the custody proceedings. 416 F.3d at 203-04. Here, Petitioner does not allege that he has been granted custody, even temporarily, by the court in Quintana Roo; thus, adjudicating the petition risks undermining, rather than aiding, a final custody determination.

Given the above, and the need to balance the almost-mandatory nature of *Younger* abstention with "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them[,]" *Colo. R. Conservation Water Dist. v. United States*, 424 U.S. 800, 817 (1976), the Court will not adjudicate or refrain from adjudicating the Petition until it is certain that it possesses the authority to do so. Accordingly, Petitioner's Motion to Appoint Process Server (Doc. #3) is SUSTAINED. Within twenty-eight (28) days after the appointed process server perfects service of the Petition upon Respondent, and notice of service is filed with the Court, Petitioner is ORDERED to show cause why the Petition should not be dismissed pursuant to *Younger*, given the existing State Court custody order. Respondent may file a responsive memorandum within twenty-one (21) days thereafter. The Request to Expedite Proceedings (Doc. #4) is OVERRULED WITHOUT PREJUDICE subject to renewal if this Court determines that Petitioner may proceed.[3]

---

[3] Petitioner claims that, absent expedition, irreparable harm will occur (Doc. #4, PAGEID 150, ¶ 3). The Court recognizes that the Hague Convention and ICARA require "the most expeditious procedures

8

IT IS SO ORDERED.

March 12, 2024

        */s/ Walter H. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

---

available." *March*, 249 F.3d at 474 (internal quotation marks and citation omitted).  However, Petitioner waited nearly five months after he suspected that his children would not be returning to Mexico, and nearly three months after he initiated divorce proceedings there, before filing the Petition.  While the Court aims to resolve every matter expeditiously, Petitioner's actions and inactions belie the notion that imminent, irreparable harm will occur if his Petition is not prioritized.