IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

|  |  |
|---|---|
| JORDAN SCHONER, | : |
| Petitioner, | : Case No. 3:23-cv-382 |
| v. | : Judge Walter H. Rice |
| SARAH SCHONER, | : Mag. Judge Peter B. Silvain, Jr. |
| Respondent. | : |

---

DECISION AND ENTRY DISMISSING WITHOUT PREJUDICE VERIFIED PETITION FOR RETURN OF THE CHILDREN TO MEXICO AND ISSUANCE OF SHOW CAUSE ORDER (DOC. #1) PURSUANT TO THE *YOUNGER V. HARRIS* ABSTENTION DOCTRINE; TERMINATION ENTRY

---

Before the Court is the Verified Petition for Return of the Children to Mexico and Issuance of Show Cause Order of Petitioner Jordan Schoner, who seeks to have this Court return his children H.E.S. and A.M.S., who currently reside in the United States with their mother, Respondent Sarah Schoner, to Mexico. (Petition, Doc. #1). After reviewing the Petition, the Court issued an Order requiring Petitioner to Show Cause why the Petition should not be dismissed pursuant to the *Younger v. Harris* abstention doctrine. (Order, Doc. #6, citing *Younger*, 401 U.S. 37 (1971)). Petitioner filed a Response (Doc. #13), Respondent filed a Reply (Doc.

#14), and Petitioner filed a Sur-Reply. (Doc. #15).[1] For the reasons set forth below, the Court ABSTAINS from exercising jurisdiction and DISMISSES the Petition WITHOUT PREJUDICE.

I.      **Factual Background and Procedural History**

The Court incorporates by reference its recitation of the litigation history prior to its March 12, 2024, Order. (Doc. #6, PAGEID 166-68). In relevant part, the Court notes that in June 2023, Respondent took H.E.S. and A.M.S. from their domicile in Quintana Roo, Mexico, to Ohio. On July 21, 2023, in conjunction with a Complaint for Legal Separation, Respondent filed a Motion for *Ex-Parte* Emergency Custody in the Montgomery County, Ohio, Court of Common Pleas, Domestic Relations Division ("State Court"), which the State Court granted that day. On March 11, 2024, Respondent filed a Motion to Convert the Legal Separation Procedure to one of Divorce; the State Court sustained that Motion on March 13, 2024. (Doc. #1, PAGEID 76; *see also Schoner v. Schoner*, Case No. 2023 LS 00009, https://pro.mcohio.org/, last accessed Jun. 24, 2024). Meanwhile, Petitioner filed for divorce in Quintana Roo on September 25, 2023, and filed the instant Petition on December 19, 2023. (*Id.* at PAGEID 8, ¶ 46). Therein, Petitioner alleges that Respondent's removing H.E.S. and A.M.S. from

---

[1] The Court notes that its original order did not contemplate the filing of a sur-reply (Doc. #6, PAGEID 173), and Petitioner did not seek leave of Court prior to filing. *See also* S.D. OHIO CIV.R. 7.2(a)(2) (Beyond initial, response, and reply memoranda, "[n]o additional memoranda . . . are permitted except upon leave of court for good cause shown.") Nonetheless, out of an abundance of caution, the Court considers the issues raised in the Sur-Reply.

2

Mexico violated The Convention on the Civil Aspects of International Child Abduction ("Hague Child Convention"), a treaty ratified by the United States and enacted in 1988 by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*, and to which the United States and Mexico became "contracting countries" (*i.e.*, countries with reciprocal return obligations) in 1991. (Doc. #1, PAGEID 2, ¶¶ 2-5). Petitioner asserts that under the Hague Child Convention, this Court must return H.E.S. and A.M.S. to Mexico, their "country of habitual residence," during the pendency of custody and divorce proceedings. (*Id.* at PAGEID 9-10, ¶¶ 60, 67-68, quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 5 (2014)).

In the Order of March 12, 2024, the Court noted the concurrent jurisdiction of federal and state courts under ICARA, and the need of this Court to give full faith and credit "to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter." (Doc. #6, PAGEID 168, quoting 22 U.S.C. § 9003(g); citing 22 U.S.C. § 9003(a); *see also* 28 U.S.C. § 1738 ("The records and judicial proceedings of any such State . . . shall have the same full faith and credit in every court within the United States[.]"). Given (1) the pending State Court civil lawsuit, (2) which implicated important state interests, and that (3) Petitioner has the opportunity to raise his Hague Child Convention claim in that lawsuit, the Court raised the distinct possibility that all three elements of *Younger* abstention had been met, and that it should decline to exercise jurisdiction and *sua sponte* dismiss the Petition without

3

prejudice. (*Id.* at PAGEID 169-70, citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982); *Squire v. Coughlan*, 469 F.3d 551, 555, 558 (6th Cir. 2006); *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990). The Court expressed particular concern that: (1) the State Court, as part of the ongoing divorce proceedings, had issued a custody order with respect to H.E.S. and A.M.S., and (2) if this Court granted Petitioner the relief he requested and Respondent intended to stay in the United States, then the Court would be ordering the children's removal in contravention of that State Court order and in violation of principles of comity. (*Id.* at PAGEID 171). The Court also queried whether "a Hague [Child] Convention petition may be a compulsory counterclaim to a divorce complaint under Ohio law." (*Id.*).

The Court, after observing that *Younger* abstention in this context is a matter of first impression within the United States Court of Appeals for the Sixth Circuit, noted that other caselaw weighed in favor of the state court divorce and custody disputes giving way to the federal court's adjudication of the Hague Child Convention petition. (Doc. #6, PAGEID 171-72 (citations omitted)). However, the Court concluded that those cases were inapposite, because unlike in those cases, the State Court herein has issued a valid custody order, and no competing order has been issued in Quintana Roo; "thus, adjudicating the petition risks undermining, rather than aiding, a final custody determination." (*Id.* at PAGEID 172-73). In light of the above, the Court ordered Petitioner to show cause why the Petition should not be dismissed. (*Id.* at PAGEID 173).

4

Meanwhile, on February 12, 2024, the State Court issued an Order Scheduling Final Hearing, stating that: "The records of the Clerk of Courts indicate that service was completed [upon Petitioner] on January 26, 2024.  Accordingly, this case has been set as a **non-contested divorce or legal separation** on **March 28, 2024**[.]"  (Doc. #14, PAGEID 348 (emphasis in original)).  On February 20, 2024, counsel for Petitioner entered a "notice of limited appearance . . . for the limited scope of contesting jurisdiction as authorized by Defendant."  (*Id.* at PAGEID 350).  Two days later, Petitioner's counsel moved to continue the March 28 hearing, because "[c]ounsel for Defendant has previously scheduled hearings that day."  (*Id.* at PAGEID 352-53).  There was nothing, in the motion or in any subsequent State Court filing, regarding issues of service or flaws in personal jurisdiction.  The State Court sustained the motion and set a telephone conference for June 18, 2024.[2]

In his Response, Petitioner argues that service has not been perfected upon Petitioner in the Ohio case; consequently, he claims, the Ohio and Quintana Roo cases may not proceed.  (Doc. #13, PAGEID 325-26).  Specifically, Petitioner asserts that sending the summons via certified mail, having it returned unclaimed, then re-sending via regular mail, having that second mailing returned unclaimed, may be sufficient for serving a defendant in the United States.  However, such efforts are insufficient when process has attempted to be served upon someone, like Petitioner, who is domiciled in a foreign country subject to the Hague

---

[2] The docket does not reflect that that June 18, 2024, conference took place, or if it did, what was discussed.

5

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"). (*Id*. at PAGEID 326-27, quoting HAGUE SERV. CONV. art. VIII, X(b-c); OHIO CIV.R. 4.5(A)). Under Ohio law, absent valid service, there is no jurisdiction to hear the complaint, and any judgment is void *ab initio*. (*Id*. at PAGEID 327-28, quoting *Lewis v. Moore*, 2017-Ohio-4049, 91 N.E.3d 334, ¶ 9 (10th Dist.)). Petitioner argues that "[w]ithout personal jurisdiction, the Petitioner is not required to avail himself to the jurisdiction of the State Court and is not required to assert his Hague claims in a State Case that does not have personal jurisdiction over him." (*Id*. at PAGEID 328). Further, "prong 1 of the *Younger* abstention [doctrine] . . . should not apply[,] as the state court [herein] does not have authority to issue orders unless service is obtained upon Petitioner." (*Id*. (internal citation omitted)). In sum, Petitioner claims, the lack of service on and jurisdiction over him means that there is no valid custody order, there is no State Court proceeding pending against him, and he is free to raise his Hague Child Convention claim in this litigation. (*Id*.).

Petitioner asserts that there are other concerns weighing in favor of this Court exercising its jurisdiction. *First*, service was effected upon Respondent in the instant case, meaning that this is the only court which has personal jurisdiction over both parties. Accordingly, the State Court case must be stayed until the "propriety of removal" question under the Hague Child Convention can be resolved. (Doc. #13, PAGEID 328, quoting HAGUE CHILD CONV. art. XVI). *Second*, *Younger* abstention is only appropriate when the relief sought is "equitable or otherwise

6

discretionary." Here, the relief sought is mandatory, as the Court *shall order* children returned to the country of origin if they were found to have been brought here unlawfully. (*Id*. at PAGEID 330, quoting *Quackenbush v. Allstate*, 517 U.S. 706, 731 (1996), *superseded on other grounds by* 28 U.S.C. § 1404(a); HAGUE CHILD CONV. art. XII; *Silverman v. Silverman*, 267 F.3d 788, 792 (8th Cir. 2001)). Also, although federal and state courts have concurrent jurisdiction over Hague Child Convention petitions, ICARA raises a federal question, and federal court is the best venue in which to adjudicate a claim between people domiciled in two different countries. Thus, he argues, this Court—the only one with both personal and subject-matter jurisdiction—should adjudicate the Petition. (*Id*. at PAGEID 331-32).

In her Reply, Respondent notes that the State Court has concluded that service was effected against Petitioner, and argues that, despite Petitioner's counsel purportedly appearing only for purposes of contesting jurisdiction, he has not made a formal contestation. (Doc. #14, PAGEID 342-43, citing Doc. #14, PAGEID 348, 350, 352-53). Further, while the State Court custody order was not made pursuant to the Hague Child Convention, the order is, in effect, a preliminary denial of any attempt to return H.E.S. and A.M.S. to Mexico pursuant to Petitioner's Hague Child Convention Petition; thus, Respondent asserts, it is a decision to which this Court must afford full faith and credit. (*Id*. at PAGEID 343-44, citing 22 U.S.C. § 9003(g)). Respondent agrees with the Court's preliminary impression that all *Younger* abstention elements are met—there is an existing state

7

action involving important state interests, and because ICARA vests concurrent jurisdiction in federal and state courts, Petitioner can raise his Hague Child Convention petition in the State Court proceeding. (*Id.* at PAGEID 344, citing 22 U.S.C. § 9003(a)). Further, she claims that the State Court, in issuing the temporary custody order, adjudged that Ohio is the home state of H.E.S. and A.M.S; thus, both subject-matter and personal jurisdiction are proper. (Doc. #14, PAGEID 345, citing OHIO REV. CODE §§ 3105.011, 3127.15). Finally, Respondent asserts that allowing Petitioner to prosecute the Petition in this Court, rather than State Court, needlessly complicates resolution of the dispute and violates principles of comity. (*Id.* at PAGEID 345-46, quoting *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309-10 (1st Cir. 1986)).

In the Sur-Reply, Petitioner argues that Respondent's failure to serve him divests the State Court of jurisdiction, and that the reason he "has not yet had to file a formal motion to dismiss the case for lack of jurisdiction as the case has been continued . . . so that the [State Court] can act in accordance with the ruling made by this Court." (Doc. #15, PAGEID 356). He further asserts that it is Respondent who is forum-shopping by filing the action in State Court despite not meeting Ohio's six-month residency requirement, and that this Court's abstaining would undermine the Hague Child Convention's purpose of "protect[ing] the legal custody rights of the non-abducting parent." (*Id.* at PAGEID 357, quoting *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995)). Finally, he asserts that Respondent's invocation of Ohio Rev. Code § 3127.15 is inappropriate, because Ohio is only the

8

"home state" in a custody dispute if a parent had been living in the state for at least six consecutive months. Finally, he claims that this Court is the only one that can make the required "determination as to whether the children should be returned to their habitual residence." (*Id.* at PAGEID 358-59, citing OHIO REV. CODE §§ 3127.01, 3127.15).

The matter is now ripe for decision.

**II.    Law**

*Younger* abstention may be appropriate when the following elements are met: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining*, 921 F.2d at 639, citing *Middlesex County*, 457 U.S. at 432. The *Younger* prerequisites set forth in *Middlesex County* were clarified by the Supreme Court in *Sprint Comm'ns, Inc. v. Jacobs*, wherein the Court reiterated that abstention should be the exception, and in addition to the *Middlesex County* elements, abstention is appropriate only in "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" 571 U.S. 69, 73 (2013), quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68) (1989) ("*NOPSI*"). Importantly, neither *Sprint* nor *NOPSI* overruled or abrogated *Middlesex County*, and the latter case remains good law in the Sixth Circuit. While, unlike the *Rooker-*

9

*Feldman* doctrine, *Younger* abstention is not a jurisdictional threshold, "a federal court *must* decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2006) (emphasis added); *see also Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 640 (6th Cir. 1990), citing *Middlesex County*, 457 U.S. at 434-35 ("[t]here can be no doubt that Ohio has an important interest in preserving the health and safety of its workers.").

### III. Analysis

Much of Petitioner's argument is that service has not been effected in the State Court case, meaning that the State Court lacks jurisdiction to hear the case. (Doc. #13, PAGEID 325-28; Doc. #15, PAGEID 355-56). However, that does not change the fact that the State Court proceeding is ongoing. Petitioner does not, and cannot reasonably, claim that important state interests are not implicated in the State Court proceeding[3], or that he is unable to raise the claims in his Petition in that proceeding. Further, a state order regarding child custody during a marital dissolution action certainly falls into the third *Sprint/NOPSI* category of "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73; *see also*

---

[33] In *Hazbun Escaf v. Rodriquez*, 191 F. Supp. 2d 685, 693 (E.D. Va. 2001), the district court held that "the state court's interest in the custody matter does not arise until the Hague Convention and ICARA issues have been decided." However, in that case, the respondent was attempting to implicate state interests by modifying an existing order that had vested legal custody of the child in the *petitioner*. In this case, the state interests have already been implicated by a valid order giving custody to the *Respondent*, which Petitioner is attempting to undo collaterally. Thus, unlike *Hazbun Escaf*, "substantial comity concerns exist in the instant circumstances" of this case. *Id.*

10

*Falco v. Justice of the Matrimonial Parts of the Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 428 (2d Cir. 2015) ("Orders relating to the selection and compensation of court-appointed counsel for children are integral to the State court's ability to perform its judicial function in divorce and custody proceedings."). The briefing has convinced that the Court that all three *Younger* elements are met, and that *this* case qualifies as an "exceptional circumstance" justifying abstention. Thus, Petitioner faces a heavy burden to show why abstention is inappropriate.

Mindful of the Court's admonition that "H.E.S. and A.M.S. are subject to a valid custody order, and principles of comity caution against disturbing that order" (Doc. #6, PAGEID 171), Petitioner raises four arguments against abstention:

1. Lack of service means that the State Court lacks personal jurisdiction against him, and thus, any order issued by the State Court is void;

2. Because the Petition only seeks the children's return to Mexico without opining on the merits of the custody dispute, there is no overlap between the proceedings;

3. Article XVI of the Hague Child Convention requires the state court to refrain; and

4. Because relief under the Hague Child Convention is mandatory, rather than equitable or discretionary, abstention is not appropriate.

(Doc. #13, PAGEID 326-31; Doc. #15, PAGEID 357).

These arguments are unavailing for several reasons. *First*, as Respondent notes, the State Court has determined that Petitioner *was* served. (Doc. #14, PAGEID 348). If Petitioner thinks that: service has not been effected, the State Court lacks jurisdiction, or Respondent had not been domiciled in Ohio long enough

11

to file in the State Court, then he can raise those arguments in a motion to dismiss or on direct appeal. Yet, rather than make any of those arguments, Petitioner is essentially asking this Court to overturn the State Court's findings on jurisdiction and service and void the custody order. He identifies no mechanism by which the Court can do so and, indeed, none exists. *Second*, the fact that a valid order exists means that Article XVI's requirement that a state court refrain from adjudicating the merits of a custody dispute is irrelevant. Article XVI cannot be reasonably read to require a state court to *vacate* any custody orders enacted before the Hague Child Convention petition was filed, and Petitioner points us to no caselaw that has adopted such a reading. Thus, even if the State Court were to refrain from further action until the Petition was resolved, the custody order keeping the children with Respondent would still be valid.[4]

*Third*, even though Petitioner is correct that the State Court custody proceeding and the instant Petition deal with separate issues, and thus, ICARA's full faith and credit provision is not implicated, 22 U.S.C. § 9003(g), the custody order and State Court case are still "records and judicial proceedings" to which this Court must afford full faith and credit. 28 U.S.C. § 1738. *Fourth*, the Court acknowledges that Petitioner is correct that relief under the Hague Child Convention and ICARA is mandatory; if a district court concludes that children

---

[4] Article XVI is also only triggered when the state court "receiv[es] notice of a wrongful removal or retention of a child[.]" HAGUE CHILD CONV. art. XVI. The State Court docket does not reflect, as of June 24, 2024, that the State Court has been notified, by Petitioner or anyone else, of a potential Hague Child Convention violation.

12

were taken unlawfully from their place of habitual residence, then the court *must* send the children back to that country pending the outcome of the divorce proceedings. *Silverman*, 264 F.3d at 792. Yet, none of the cases cited by this Court or Petitioner holding that the state custody proceedings must yield to the federal Hague Child Convention petition (Doc. #6, PAGEID 171-73; Doc. #13, PAGEID 329-31), address the relief Petitioner seeks: to have H.E.S. and A.M.S. sent to live in Mexico, presumably with Petitioner, *in contravention of an undisputed State Court order granting custody to Respondent while she is living in Ohio*. Granting such relief would amount to, at minimum, preliminarily enjoining the State Court order, and at maximum, voiding that order. Again, the Court has no ability to do that, particularly here, when Petitioner does not claim that he has been granted custody by the court in Quintana Roo.

Further, while Petitioner argues that the State Court "case has been continued [. . .] so that the [State] Court can act in accordance with the ruling made by this Court" (Doc. #15, PAGEID 356), there is no indication from the docket that the case has been stayed, much less that the reason for any stay or continuance is for this Court to adjudicate the Petition. Petitioner contends that he "did reiterate to the Court that the case in [the State] Court cannot proceed as service had not been perfected in a phone conference with the Judge." (*Id.*). Petitioner is presumably referring to the State Court, as this Court has had no conversations with Petitioner's counsel. However, such a statement to the State Court judge has not been formalized in a motion, much less memorialized in an

13

order to stay. Most importantly, the State Court order remains in effect and requires that H.E.S. and A.M.S. be in the custody of Respondent. If the State Court wishes to vacate that order after Petitioner raises a Hague Child Convention petition in that court, it is free to do so. But this Court cannot and will not disturb that order at this time.

In sum, the Court realizes that abstention is the exception, never the rule, and that post-*Middlesex County* jurisprudence has narrowed the instances where *Younger* abstention is appropriate. Nonetheless, it is appropriate in this case. The three *Younger* elements—(1) ongoing state court proceeding, (2) which implicates important state interests, and (3) Petitioner has the opportunity to raise his federal claims in the state court—are satisfied. It fits squarely within the "exceptional circumstance" of "furtherance of the state courts' ability to perform their judicial functions" set forth in *Sprint/NOPSI*. Any issues with respect to service of Petitioner and personal jurisdiction in the State Court proceeding are the province of the State Court. Unlike other Hague Child Convention cases where abstention has been held to be improper, there exists an undisputed State Court custody order to which this Court must give full faith and credit. As the relief requested by Petitioner in the instant Petition would necessarily contravene that order, this Court must abstain from proceeding further.

14

**IV.  Conclusion**

Pursuant to the *Younger* doctrine, the Court ABSTAINS from exercising jurisdiction in the instant matter.  The Petition (Doc. #1) is DISMISSED WITHOUT PREJUDICE to refiling in a state court of competent jurisdiction.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

IT IS SO ORDERED.

June 25, 2024

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT